Marybeth McCABE, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

No. 96–8245.

United States District Court, E.D. Pennsylvania.

Jan. 13, 1999.

Joseph M. Adams, Joseph M. Adams, P.C., Doylestown, PA, for plaintiff.

Wayne A. Schaible, Earl L. Britt, Robert J. Williams, Britt, Hankins, Schaible, Moughan, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

The plaintiff, Marybeth McCabe (McCabe), brought an action against her insurer, defendant State Farm Mutual Automobile Insurance Company (State Farm), for damages arising out of the alleged mishandling of an insurance claim. The parties have filed cross motions, State Farm for summary judgment and McCabe for partial summary judgment.

### I. Background

On March 22, 1991, McCabe was injured in an automobile accident when her car was hit from the rear. As a result of the accident, she claims she suffers serious permanent injuries including a brachial plexus traction injury which requires ongoing medical treatment and physical therapy. She incurred medical expenses in excess of $18,000. As for the brachial plexus injury, McCabe was advised that she would need surgery which would expose her to potential paralysis. Besides medical expenses, McCabe claims a loss of approximately $25,000 from her law practice.

At the time of the accident, McCabe was insured by State Farm. On December 22, 1992, the tortfeasor offered McCabe $92,-755.39 to settle, which she accepted following State Farm's February 1993 approval of the offer. On December 30, 1992, McCabe's lawyer, Mona Shuben Picciotto, notified State Farm that McCabe would seek underinsured motorist benefits (UIM) under the terms of her insurance policy. In August of 1993, McCabe discharged her lawyer. On November 8, 1993, McCabe submitted medical documentation to State Farm regarding treatment for her injuries. On March 1, 1994, McCabe wrote to State Farm demanding the $100,000 policy limits pursuant to the UIM claim. In response to a request by State Farm, McCabe submitted additional medical records on July 20, 1994.

On September 28, 1994, State Farm offered McCabe $3,000 to settle her claim. The following day, McCabe rejected the offer and demanded arbitration pursuant to the terms of the insurance policy. Following this demand, State Farm retained John F. Lewis as counsel to handle the arbitration and Mr. Lewis appointed William H. Pugh, V, Esq. as State Farm's arbitrator. On October 25, 1994, McCabe requested an extension of time to retain new counsel and to appoint an arbitrator. McCabe chose Joseph M. Adams as her attorney, who in turn appointed Carol A. Shelly, Esq. as McCabe's arbitrator. On June 14, 1995, both arbitrators agreed on the choice of Rae Boylan Thomas, Esq. as the neutral arbitrator.

Following McCabe's demand for arbitration, State Farm requested additional medical authorizations from McCabe, a statement under oath (SUO), and an independent medical examination (IME). In February 1995, McCabe forwarded the medical authorizations to Mr. Lewis, followed by the SUO in August 1995. Dr. Lawrence Kerson was chosen by Mr. Lewis to conduct the IME. The examination took place on September 8, 1995. On September 18, 1995, McCabe was examined by Dr. Robert Schwartzman, who indicated the potential for surgery to treat her injuries. In April 1996, both Dr. Kerson and Dr. Schwartzman submitted additional reports. Dr. Schwartzman continued to recommend surgery and Dr. Kerson advised against it.

On April 10, 1996, Dr. Schwartzman was deposed. On May 17, 1996, State Farm made a second offer to McCabe in the sum of $25,000. On May 20, 1996, McCabe refused the offer, reiterating her demand for the policy limits. Dr. Kerson was deposed on May 23, 1996. Following his deposition, State Farm increased its offer to $30,000. The next day, McCabe refused this offer and again demanded the $100,000 policy limits.

The arbitration hearing was held on May 30, 1996. On June 6, 1996, the arbitrators unanimously agreed to an award of $52,-744.11. On July 1, 1996, State Farm paid this amount to McCabe.

## II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. When the moving party does not bear the burden of persuasion at trial, as here, its burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading," *id.,* but must support its response with affidavits, depositions, answers to interrogatories, or admissions on file. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990).

To determine whether summary judgment is appropriate, I must determine whether any genuine issue of material fact exists. An issue is "material" only if the dispute "might affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Of course, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992). Moreover, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *see also Big Apple BMW,* 974 F.2d at 1363. Thus, my inquiry at the summary judgment stage is only the "threshold inquiry of determining whether there is the need for a trial," that is, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law." *Anderson,* 477 U.S. at 250–52, 106 S.Ct. 2505.

### III. Bad Faith

McCabe brings her bad faith claim under 42 Pa.C.S.A. § 8371 which provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all the following actions:
>
> (1) award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

"[T]o recover under a claim for bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Property & Cas. Ins. Co.,* 437 Pa.Super. 108, 649 A.2d 680, 688 (1994); see also *Klinger v. State Farm Mutual Auto. Ins. Co.,* 115 F.3d 230, 233 (3d Cir.1997). The plaintiff must establish bad faith by clear and convincing evidence. *Polselli v. Nationwide Mut. Fire Ins. Co.,* 23 F.3d 747, 750 (3d Cir.1994). Since plaintiff's burden at trial is higher than preponderance of the evidence, plaintiff's burden in opposing summary judgment is also higher. *Anderson,* 477 U.S. at 254 ("... in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."). Thus I must consider whether McCabe has come forward with sufficient facts to meet this substantive evidentiary burden.

State Farm moves for summary judgment on the ground that there is no evidence that it acted unreasonably in refusing to pay UIM benefits to McCabe.[1] State Farm asserts that it acted reasonably in disputing the value of McCabe's UIM claim, in handling her claim, in negotiating a potential settlement, and in the arbitration process.

State Farm puts forward several bases for initially refusing to pay the UIM policy limits. First, McCabe had been previously compensated by the tortfeasor in excess of her out of pocket costs and losses. (Exhs. C, E, Complaint at ¶¶ 11, 12).[2] Second, McCabe was still treating for injuries from a previous accident and the causative role of the two accidents was not specifically determinable. (Exh. K). Third, McCabe's injury claim was undercut by her work hours. (Exh. B, at 34). Fourth, McCabe's treating physicians produced differing reports, sometimes reporting normal findings with respect to her injuries. (Exhs. K, G, H, B, at 28–30). McCabe presents no evidence to show that State Farm acted unreasonably in disputing the value of the UIM claim.

State Farm contends that it handled the UIM claim in a reasonable manner. Upon notification by McCabe in early 1993, State Farm began its claims process. (Exhs.D, E). Later in 1993, McCabe changed attorneys, which caused delays in the arbitration proceeding. (Exh. N). State Farm received complete medical authorization from McCabe in February 1995. (Exhs. P, B, at 110–13). Following additional delays sought by McCabe (Exh. B, at 169–71), State Farm took her SUO in August 1995. State Farm also notes that its request for the IME and use of the IME were proper under the insurance policy. (Exh. F, at 6).

McCabe seeks to show that State Farm did not properly handle her claim. Specifically, McCabe focuses on State Farm's timeliness in processing her claim, the supposed animosity of one of State Farm's claims adjusters, and the use and method of the IME.

---

1. Since McCabe must show a lack of reasonable basis in State Farm's handling of the claim, State Farm may prevail by affirmatively demonstrating a reasonable basis for its actions if McCabe does not present contradictory evidence.

2. State Farm included complete deposition transcripts in the exhibits accompanying its summary judgment motion. Therefore, citations refer to these exhibits unless otherwise specified.

■ McCabe considers a two and a half month delay in the handling of her claim, caused by a switch in her claims representative from Thomas Hatch to Kim Gibbons, as evidence of State Farm's bad faith. (Exh. AB, at 35–36). However, both State Farm Claims Specialist Kim Gibbons and State Farm Superintendent Nadine Hamilton testified that the delay was caused by an internal reorganization. (Exhs. AB, at 26–27, AC at 21–22). McCabe provides no evidence to counter this testimony. This time delay alone does not create bad faith. *See Quaciari v. Allstate Ins. Co.*, 998 F.Supp. 578, 583 (E.D.Pa.1998).

■ McCabe complains that Kim Gibbons exhibited animosity toward her, making it impossible for State Farm to fairly handle her claim. This allegation misapprehends the bad faith claim, which requires an insured to demonstrate a lack of reasonable basis to an insurer's denial of benefits. The attitude of a lower level claims representative, who lacked the authority to make final decisions on the claim (Exh. AB, at 124–25) and who handled McCabe's claim for only a portion of the time (Exh. AB, at 123–24, Complaint at ¶¶ 23, 24), is not an element of this cause of action. McCabe has failed to show how this alleged dislike for her resulted in State Farm's denying her UIM benefits without a reasonable basis.

[5] McCabe attacks both Dr. Kerson who conducted the IME, and the use of the IME by State Farm. Since the policy specifically provides that the claimant shall "consent to be examined by physicians chosen and paid by [State Farm] as often as [State Farm] reasonably may require," (Exh. F, at 6), McCabe's complaints about the IME are baseless. McCabe claims that Dr. Kerson's failure to use a particular diagnostic test, coupled with Mr. Lewis's lack of inquiry about the non-use, reveals abuse of the IME by State Farm. Dr. Kerson, however, testified that he did not consider the test to be of any value for McCabe. (Exh. Z, at 35–36). Dr. Kerson also gave a complete explanation of the factors supporting his diagnosis. (Exh. Z, at 29). In *Seidman v. Minnesota Mut. Life Ins. Co.*, 1997 WL 597608, at *3 (E.D.Pa.1997), the court held that an insured

could dispute the adequacy of an examination, but, as a matter of law, it was not bad faith for an insurance company to rely upon the examination. McCabe has offered nothing to indicate why I should not follow this analysis.

McCabe further contends that Dr. Kerson's representation by a member of Mr. Pugh's firm in a medical malpractice action, pending at the time of the arbitration, creates bias. This simultaneous representation is irrelevant because it is undisputed that Dr. Kerson did not know who the IME was for when he conducted it. (Exh. Z, at 6–9). Thus he did not know of either Mr. Pugh's involvement or State Farm's. In fact, Dr. Kerson had no contact with anyone at State Farm regarding the IME. (Exh. Z, at 49). More significantly, McCabe has put forward no evidence that Dr. Kerson's testimony was untruthful or misleading. The mere fact that his diagnosis differed from that of McCabe's medical expert, Dr. Schwartzman, (Exhs.Q, R, S), does not make it of questionable validity, especially as other physicians also differed from Dr. Schwartzman (Exh. K). McCabe fails to overcome State Farm's evidence that it acted reasonably in handling her UIM claim.

■ State Farm asserts that it acted reasonably in settlement negotiations because each offer followed new information on McCabe's injuries. State Farm made an initial offer of $3,000 in September, 1994. (Exh. L). In response, McCabe rejected the offer, demanded arbitration, and threatened a lawsuit. (Exh. M). Following receipt of McCabe's medical documentation, the SUO, the IME, and the taking of depositions for the arbitration, State Farm made a second offer of $25,000 on May 17, 1996, which was rejected by McCabe who again demanded the $100,000 policy limit. (Exh. T). Finally, after additional testimony was received, State Farm increased its offer to $30,000 on May 23, 1996. (Exh. U). This offer was also rejected by McCabe, who reiterated her demand for the policy limits. (Exh. U).

McCabe alleges that State Farm's final offer unreasonably failed to reflect the valuation that its outside counsel placed upon the

claim. McCabe asserts that Mr. Lewis valued the claim at $50,000 to $60,000, based upon the testimony of State Farm Claims Specialist Kim Gibbons (Exh. AB, at 123). However, both Mr. Lewis and State Farm Superintendent Nadine Hamilton testified to the contrary. According to Ms. Hamilton, Mr. Lewis considered that amount to be a potential maximum award. (Exh AC, at 62–64). Mr. Lewis stated that the $50,000 to $60,000 range was an upside potential verdict. (Exh Y, at 42). The $30,000 figure was a compromise between the perceived maximum and minimum arbitration awards. (Exh AC, at 64–65). McCabe has mischaracterized the testimony and thus has failed to show that State Farm acted unreasonably with respect to the settlement negotiations.

█ State Farm asserts that it appropriately relied upon the arbitration hearing to resolve the UIM claim. McCabe alleges that the arbitration process was tainted, making State Farm's reliance upon the arbitration award bad faith. The insurance policy provided for arbitration to resolve the UIM claim. (Exh. F, at 17). Ms. Shelly, McCabe's chosen arbitrator, in conjunction with State Farm's arbitrator selected the neutral arbitrator, Rae Boylan Thomas. (Exh. O). The three arbitrators unanimously awarded McCabe $52,744.11. (Exh. V). McCabe did not challenge the arbitration award, but accepted payment from State Farm.[3] These facts provide a firm basis for State Farm's reasonable reliance upon the results of the arbitration.

█ McCabe also alleges that State Farm's use of Dr. Kerson's testimony at the arbitration hearing reveals an inconsistency on State Farm's behalf that must be bad faith. According to McCabe, State Farm's increased settlement offer means it believed Dr. Schwartzman's diagnosis, (Exhs.R, U); therefore it used Dr. Kerson's contradictory testimony, (Exhs.Q, S), to win the arbitration. Again, McCabe has lost sight of the bad faith claim. To prove bad faith, a plaintiff must attack the reasonableness of an insurer in denying benefits. There is no

reason for State Farm to doubt the truthfulness of Dr. Kerson's testimony. Thus McCabe's argument has no force.

State Farm has provided sufficient evidence that it acted reasonably in denying McCabe UIM benefits. McCabe has presented no evidence to the contrary. Therefore, I will grant summary judgment for State Farm on the bad faith claim.

IV. Breach of Contract

█ McCabe's breach of contract claim requires her to prove four elements: the existence of a contract between the parties, the essential terms of the contract, a breach of the duty imposed by the contract, and damages resulting from the breach. *Electron Energy Corp. v. Short,* 408 Pa.Super. 563, 597 A.2d 175, 178–80 (1991); *General State Auth. v. Coleman Cable & Wire Co.,* 27 Pa.Cmwlth. 385, 365 A.2d 1347, 1349 (1976); see also *Caplan v. Fellheimer, Eichen, Braverman & Kaskey,* 5 F.Supp.2d 299, 303 (E.D.Pa.1998). Interpretation of the insurance contract is assigned to the court. *Visiting Nurse Ass'n v. St. Paul Fire & Marine Ins. Co.,* 65 F.3d 1097, 1100 (3d Cir.1995); *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 566 (Pa.1983). In this instance, the operative language of the insurance policy reads: "[e]ach party shall select a competent and impartial arbitrator. These two shall select a third one." (Exh. F, at 17).

McCabe maintains that State Farm breached the contract by failing to appoint an impartial arbitrator. State Farm counters that it did not commit a breach because both the neutral arbitrator, Ms. Boylan Thomas, and the defense arbitrator, Mr. Pugh, met the legal standard for impartiality. Both State Farm and McCabe move for summary judgment on this count.

McCabe and State Farm agree that Pennsylvania law applies to the issue of arbitrator impartiality. The parties, however, disagree on the meaning of "impartial arbitrator."

---

**3.** McCabe filed her complaint in this court on December 12, 1996, more than five months after

State Farm paid the arbitration award in full.

Pennsylvania's courts and legislature value arbitration greatly because it provides "an expeditious and inexpensive method of resolving disputes with the further winning attribute of helping to ease congested court calendars." *Allstate Ins. Co. v. Fioravanti*, 451 Pa. 108, 299 A.2d 585, 589 (Pa.1973). This reflects the sanctity of arbitration and the deference given arbitration awards.

McCabe did not challenge the arbitration through a direct appeal. To allow a collateral challenge would invade the sanctity of arbitration. Dressing up the collateral attack as a breach of contract claim has no effect on this analysis. *Land v. State Farm Mut. Ins. Co.*, 410 Pa.Super. 579, 600 A.2d 605 (1991).

The courts have narrowly circumscribed their review of arbitration proceedings, and have required clear, precise, and indubitable evidence. *Fioravanti*, 299 A.2d at 588. The few exceptions to the general rule of leaving an arbitration award undisturbed are the denial of a full and fair hearing, *Smaligo v. Fireman's Fund Ins. Co.*, 432 Pa. 133, 247 A.2d 577, 580 (1968); an arbitrator's fraud, misconduct, corruption, or similar irregularity leading to an unjust, inequitable, or unconscionable award, *Fioravanti*, 299 A.2d at 588; and prior legal representation of one of the parties by an arbitrator, *Bole v. Nationwide Ins. Co.*, 475 Pa. 187, 379 A.2d 1346, 1348 (Pa.1977). The Pennsylvania Uniform Arbitration Act allows for court review of arbitration awards for evident partiality by the neutral arbitrator, but restricts filing such a challenge to within thirty days of receiving notification of the award. 42 Pa.C.S.A. § 7314.

The case of *Land v. State Farm Ins. Co.*, 410 Pa.Super. 579, 600 A.2d 605 (1991), emphasizes the narrowness of these exceptions. In *Land*, pursuant to an insurance policy requiring a competent and impartial arbitrator, the insurer chose an arbitrator it used frequently—he was nicknamed "State Farm's arbitrator"—and whose awards often favored the insurer. Nonetheless, the court found the arbitration above reproach because the arbitrator's relationship to the insurer was insufficient to bring the arbitration within the exceptions. The court concluded that "a

showing of a direct relationship between a party to an arbitration proceeding and a designated arbitrator must be shown ... before the requisite partiality of that arbitrator is established." *Land*, 600 A.2d at 607. In reaching this outcome, the court reasserted the importance of arbitration in lessening the burden on the judicial system. It noted that a lesser standard of partiality, an "indirect connection," would trigger judicial review whenever a claimant was dissatisfied with an arbitration award.

▪ The dispute before me must be analyzed against this background. Neither arbitrator challenged by McCabe fits within any of the enumerated exceptions. McCabe first contends that Mr. Pugh's financial self-interest makes him partial to State Farm, relying upon his and Mr. Lewis's practice of occasionally choosing each other as arbitrators, (Exh. Y, at 36–37). This level of financial self-interest falls far short of the corruption exception. *Fioravanti*, 299 A.2d at 588. McCabe next alleges that Mr. Pugh is partial to State Farm because his firm represented Dr. Kerson in a medical malpractice case during the pendency of the UIM claim. (Complaint Exh. O). Undisputed testimony reveals that neither Mr. Lewis nor Mr. Pugh knew of the representation while the UIM claim was active. (Exhs. X, at 11, 27, Y, at 11). Finally, McCabe asserts that ex parte communications with Mr. Lewis reveal Mr. Pugh's partiality to State Farm. McCabe highlights six phone calls between the two men that occurred after the appointment of the neutral arbitrator and before the announcement of the arbitration award, (Plaintiff's summary judgment motion Exh. 2), and their eating together during the break in the arbitration hearing, before all the evidence had been presented, (Exh. X, at 23–25). Both Mr. Lewis and Mr. Pugh stated that they had no ex parte communications concerning the merits of the case, (Exhs. X, at 46, Y, at 15–19), and McCabe presents no specific evidence to counter their sworn testimony. At best, when McCabe asserts that Mr. Pugh is partial because he and Mr. Lewis have appointed each other as arbitrators, he has an alleged connection to Dr. Kerson, and he communicated on an ex parte

basis with Mr. Lewis, she has merely shown an indirect connection between Mr. Pugh and State Farm. Since Mr. Pugh's undisputed testimony clearly demonstrates that neither he nor his firm currently have or previously had an attorney-client relationship with State Farm, (Exh. X, at 27–28), McCabe's tenuous connections are insufficient to upset the award, *Land,* 600 A.2d at 607.

McCabe asserts that alleged partiality by the neutral arbitrator, Ms. Boylan Thomas, creates a breach of contract by State Farm. Pursuant to the insurance policy, (Exh. F, at 17), Mr. Pugh and Ms. Shelly, McCabe's arbitrator, jointly chose Ms. Boylan Thomas, (Exh. O), not State Farm or its agent, Mr. Lewis. As McCabe has not established State Farm's liability for any partiality by the neutral arbitrator, she has failed to state a claim for breach of contract. Assuming that State Farm could be held liable and the statute of limitations had not run, McCabe's claim still fails because relief cannot be granted. McCabe seeks damages, but the proper remedy is to vacate the arbitration award and remand for assignment of a new panel, 42 Pa.C.S.A. §§ 7314, 7341; *Bole,* 379 A.2d at 1347.

As explained, State Farm's summary judgment motion on the breach of contract claim will be granted and the cross claim for summary judgment by McCabe will be denied.

## V. Unfair Trade Practices and Consumer Protection Law

McCabe asserts a claim under the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa.S.A. § 201–1 to 201–9.3. To state a UTPCPL claim, a plaintiff must show that the defendant committed a misfeasance, which is defined as the improper performance of a contracted obligation. *Gordon v. Pennsylvania Blue Shield,* 378 Pa.Super. 256, 548 A.2d 600, 604 (1988). The commission of a nonfeasance, defined as the mere failure to perform, is not actionable. *Gordon,* 548 A.2d at 604. Both State Farm and McCabe move for summary judgment on this count.

McCabe asserts that State Farm committed a misfeasance by failing to select an impartial arbitrator as required by the insurance policy. In response, State Farm asserts that it did not commit a misfeasance, moving for summary judgment because the failure to pay benefits is not actionable, *Gordon,* 548 A.2d at 604; the contract allowed it to request the medical records, SUO, and IME, (Exh. F, at 6, 17); and, as previously shown, it timely handled the UIM claim. McCabe's allegation raises the same issues involving Mr. Pugh as those discussed in the breach of contract section. In my analysis of the arbitration, I concluded that under the contract Mr. Pugh was impartial. Therefore, McCabe fails to show the commission of a misfeasance and cannot state a UTPCPL claim. Therefore, summary judgment will be entered for State Farm on this claim.

## VI. Deceit

McCabe's deceit claim requires her to demonstrate the following elements: a misrepresentation, a fraudulent utterance thereof, an intention to induce action thereby, justifiable reliance thereon, and damage as a proximate result. *Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Invs.,* 951 F.2d 1399, 1409 (3d Cir.1991); *Wilson v. Donegal Mut. Ins. Co.,* 410 Pa.Super. 31, 598 A.2d 1310, 1315 (1991). State Farm moves for summary judgment on the ground that it acted in accordance with the contract and, therefore, no misrepresentation exists. McCabe, relying upon the contractual language governing the selection of the arbitrators, contends that State Farm made a misrepresention by indicating that she would receive a fair arbitration hearing. As shown above, the contract was fulfilled and the arbitration proceeding was fair. Summary judgment shall be entered for State Farm on this claim.

## VII. Intentional Infliction of Emotional Distress

McCabe's final claim asserts intentional infliction of emotional distress based upon State Farm's breach of the insurance policy. Pennsylvania has a stringent test for such claims, limiting the cause of action to those instances in which the breach was of the kind where "serious emotional distress

was a particularly likely result." *D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 494 Pa. 501, 431 A.2d 966, 970 n. 5 (Pa.1981) (citations omitted). As previously discussed, State Farm has not breached its contract with McCabe. McCabe attempts to state a claim by noting that she has seen a physician twice for sleeplessness caused by State Farm's handling of her claim. (Exh B, at 172). McCabe's naked allegation of emotional distress falls far short of the standard of *D'Ambrosio* because it states no actionable link to conduct of State Farm. Thus, State Farm's summary judgment motion shall be granted on this claim.

**AND NOW,** this 12th day of January, 1999, **IT IS ORDERED THAT** defendant's motion for summary judgment is **GRANTED** (docket # 35) and plaintiff's motion for summary judgment is **DENIED** (docket # 36). Judgment is entered in favor of defendant State Farm.