Huda ATIYEH

v.

## LIBERTY MUTUAL FIRE INSURANCE COMPANY.

No. 00–CV–2661.

United States District Court, E.D. Pennsylvania.

Jan. 8, 2002.

Edith C. Rysdyk, Scherline & Associates, Allentown, PA, for plaintiff.

William C. Foster, Steven Chung, Kelly, McLaughlin & Foster, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

KAUFFMAN, District Judge.

This is an action alleging breach of contract (Count I) and bad faith pursuant to 42 Pa.C.S.A. § 8371 (Count II) based upon Defendant's denial of Plaintiff's claim for wage loss benefits. Now before the Court is Defendant's Motion for Partial Summary Judgment on Count II (bad faith). For the reasons set forth below, the Court will deny the Motion.

## BACKGROUND

On March 19, 1999, Plaintiff Huda Atiyeh sustained personal injuries following an automobile accident. (Compl.¶ 9.) At the time, Plaintiff was insured under an automobile insurance policy issued by Defendant Liberty Mutual Fire Insurance Company that provided wage loss benefits with a policy limit of fifty thousand dollars ($50,000). (Compl.¶ 4.) On March 25, 1999, Plaintiff submitted a claim for wage loss and personal injury protection benefits. (Def.'s Mot. ¶ 5.) Defendant processed Plaintiff's claim and paid wage loss benefits in the amount of twenty three thousand eight hundred three dollars and eighty-nine cents ($23,803.89) for the time period following the date of the accident until January 2000. (Def.'s Mot. ¶¶ 6–7.)

After the accident, Plaintiff sought medical treatment from Dr. Ghodrat Daneshdoost. In a report dated April 8, 1999, Dr. Daneshdoost opined that Plaintiff suffered from a disc herniation in her spinal cord and issued a Disability Certificate for her for the period from March to November 1999. (Def.'s Mot. ¶ 12, Ex. D; Pl.'s Resp. Ex. 4.)

In November 1999, Susan Koval, who was employed by Defendant as a Claims Representative Supervisor, decided to request an Independent Medical Examination ("IME") for Plaintiff. Based upon a review of the file, the fact that Plaintiff had been out of work since March, "her employment position based on the medical documentation received and her ongoing disability," Ms. Koval sought an IME to address Plaintiff's disability status. (Pl.'s Resp.Ex. 1 at 37.) To that end, Ms. Koval gave Plaintiff's file to a representative from Concentra Medical Examinations ("Concentra"), one of the vendors that Defendant worked with to schedule IMEs. (Def.'s Reply Ex. S. at 51.)[1]

---

1. The Concentra representative then copied Plaintiff's file at Defendant's office. Ms. Koval admitted that Defendant had no policy regarding which portions of a claimant's file

Dr. M. Barry Lipson, the doctor that Concentra selected to conduct the IME, subsequently received from Concentra a file on Plaintiff that included four photographs of Plaintiff's automobile following the accident. (Def.'s Reply Ex. S. at 59–61, 64.) Dr. Lipson also received a Concentra referral letter, which presented specific inquiries for the doctor to pursue. This referral included the following statements: "Claimant is not working. Address return to work issues. Restrictions. Anticipated duration of any restrictions. Timeframes for reasonable full and partial disability status. Please see enclosed pictures of claimant's car depicting very minimal damage! Claimant has been out on disability for 9 months now! ..." (Pl.'s Resp.Ex. 3.) A notation on the bottom of this referral indicates that Ms. Koval also received a copy. (Id.)

On December 21, 1999, Dr. Lipson conducted an IME of Plaintiff. In a report dated January 18, 2000, Dr. Lipson opined that Plaintiff "is not in any way impaired or disabled or requires any treatment, as a result of the motor vehicle accident. She is capable of performing the same activities and job requirements that she was able to carry out, as of 3/19/99." (Def.'s Mot.Ex. E at 8.)

In January 2000, Defendant discontinued Plaintiff's wage loss benefits, and Plaintiff submitted to a Functional Capacity Evaluation ("FCE"), which was conducted by Mr. Don Evans. In a report dated January 19, 2000, Mr. Evans opined that Plaintiff "currently demonstrates physical ability for performing forward and overhead reached activities for up to 3 hours on an occasional basis. Seated tolerance reveals that she would be able to sit up to 4 hours on a frequent basis with periodic rest breaks." (Def.'s Mot.Ex. G at 8.) Mr. Evans recommended that a "return to work would be initially for 4 hours out of an 8 hour work day, with periodic rest breaks" and other accommodations. (Id.)

Plaintiff returned to Dr. Daneshdoost for treatment on several occasions following the accident. In a report dated February 11, 2000, Dr. Daneshdoost opined that Plaintiff was "neurologically intact," that he "could not find evidence of spinal cord impingement," and that there was "no clinical evidence of spinal cord or nerve root entrapment." (Def.'s Mot.Ex. H.) In an addendum to this report, Dr. Daneshdoost further opined that Plaintiff could return to light duty sedentary work on a part-time basis. (Def.'s Mot.Ex. I.)

### STANDARD FOR REVIEWING A SUMMARY JUDGMENT MOTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 56

When the Court decides a motion for summary judgment under Federal Rule of Civil Procedure 56, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Med. Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999) (citing *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994)). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must examine the evidence in the light most favorable to the non-moving party, and resolve all reasonable infer-

---

are sent to a doctor conducting an IME, and that she had no way of knowing if the Concentra representative copied Plaintiff's entire file or only portions thereof. (Def.'s Reply Ex. S. at 59–60.)

ences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### *ANALYSIS*

#### I. Bad Faith Standard

■ Under Pennsylvania law, an insured party may bring a cause of action against its insurer for acting in bad faith.[2] Bad faith by an insurer has been defined as "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." *Williams v. Hartford Cas. Ins. Co.*, 83 F.Supp.2d 567, 570–71 (E.D.Pa.2000), *aff'd*, 261 F.3d

495 (3d Cir.2001) (citing *Terletsky v. Prudential Property and Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994)).

■ A plaintiff must establish bad faith by clear and convincing evidence. *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 750 (3d Cir.1994). To recover on a bad faith claim, the plaintiff must show both: 1) that the insurer lacked a reasonable basis for denying benefits; and 2) that the insurer knew or recklessly disregarded its lack of reasonable basis. *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir.1997) (citing *Terletsky*, 649 A.2d at 688). Accordingly, in order to defeat a motion for summary judgment, the plaintiff must show that a reasonable jury could find by clear and convincing evidence that the insurer lacked a reasonable basis for its handling of the claim and that it recklessly disregarded its unreasonableness. *Williams*, 83 F.Supp.2d at 571; *McCabe v. State Farm Mut. Auto. Ins. Co.*, 36 F.Supp.2d 666, 671 (E.D.Pa.1999); *Jung v. Nationwide Mut. Fire Ins. Co.*, 949 F.Supp. 353, 356 (E.D.Pa.1997).

#### II. Determining Whether Defendant Acted in Bad Faith

#### A. Defendant's Conduct With Respect to the IME

■ Defendant claims that it had a reasonable basis for discontinuing Plaintiff's wage loss benefits.[3] Ms. Koval stated at her deposition that the decision to terminate Plaintiff's wage loss benefits was made on the basis of the IME (Def.'s

---

**2.** The statute provides that, upon finding that the insurer has acted in bad faith, the court may award interest on the amount of the claim from the date that the claim was made, award punitive damages against the insurer, and assess court costs and attorney fees against the insurer. *See* 42 Pa.C.S.A. § 8371.

**3.** *See McCabe*, 36 F.Supp.2d at 670 n. 1 (noting that because the plaintiff must show a lack of reasonable basis for the insurer's handling of the claim in order to prove bad faith, the insurer may prevail on summary judgment by affirmatively demonstrating a reasonable basis for its actions if the plaintiff does not present contradictory evidence).

Reply Ex. S. at 120–22), in which Dr. Lipson opined that Plaintiff "is not in any way impaired or disabled or requires any treatment, as a result of the motor vehicle accident. She is capable of performing the same activities and job requirements that she was able to carry out, as of 3/19/99." (Def.'s Mot.Ex. E at 8). Plaintiff, however, asserts that Defendant acted in bad faith with respect to the IME, in that the Concentra referral letter [4] "suggests to the doctor what the desired opinion should state." (Pl.'s Resp. ¶ 22.) [5] Plaintiff has demonstrated that a genuine issue of material fact exists as to whether the IME was a reasonable basis for Defendant to discontinue Plaintiff's wage loss benefits, because Dr. Lipson may have been unduly influenced by the statements on the Concentra referral letter. In light of the fact that Ms. Koval apparently received a copy of the allegedly suggestive letter, there is also a genuine issue of material fact as to whether Defendant knew or recklessly disregarded the risk that the IME did not constitute a reasonable basis for Defendant's decision.

**4.** The letter included the following statements: "Claimant is not working. Address return to work issues. Restrictions. Anticipated duration of any restrictions. Timeframes for reasonable full and partial disability status. Please see enclosed pictures of claimant's car depicting very minimal damage! Claimant has been out on disability for 9 months now! ..." (Pl.'s Resp.Ex. 3.)

**5.** Although Defendant itself did not actually issue the referral letter, it used Concentra's services to arrange the IME and apparently received a copy of this letter that Concentra had sent to Dr. Lipson. See *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 594–95 (E.D.Pa.1999), aff'd, 234 F.3d 1265 (3d Cir. 2000) ("[T]he bad faith statute is not intended to be a means for individual plaintiffs to attack an entire insurance industry; rather, it addresses only whether insurers acted recklessly or with ill will in a particular case, not whether its business practices are reasonable

## B. Defendant's Conduct With Respect to Partial Wage Loss Benefits

Although Ms. Koval testified that the decision to terminate Plaintiff's wage loss benefits was based on the IME, in moving for summary judgment, Defendant presents several additional grounds to support its claim that it had a reasonable basis for discontinuing benefits. In addition to the IME, Defendant proffers the following facts: in the FCE report dated January 19, 2000, Mr. Evans opined that Plaintiff could return to work initially for four hours out of an eight hour work day (Def.'s Mot.Ex. G at 8); in the addendum to his February 11, 2000 report, Dr. Daneshdoost opined that Plaintiff "can return to work doing a light duty sedentary type of job on a part-time basis" (Def.'s Mot.Ex. I); Plaintiff sought a second opinion from Dr. Susan Hemley in March 2000, and Dr. Hemley opined in reports dated March 29, 2000 and August 30, 2000 that the MRI of Plaintiff's spine did not show any significant disc herniation or nerve root impingement, and that Plaintiff was suffering from soft tissue injuries only (Def.'s Mot.Ex. K; Ex. L); Plaintiff sought treatment from

in general. However, should a plaintiff show that an objectionable business practice was used in handling his or her claim, this would go directly to the problems the bad faith statute intended to redress.").

Plaintiff points out that Defendant did not obtain a detailed description of Plaintiff's job duties (Pl.'s Resp.Ex. 1 at 113), nor did it provide such a description to Dr. Lipson. Moreover, Plaintiff contends that Defendant failed to ensure that Dr. Lipson received all of Plaintiff's relevant medical records. (Pl.'s Resp.Ex. 1 at 90–92, 106, 136.) Plaintiff also argues that it was improper for Defendant to have allowed photographs of Plaintiff's car to be forwarded to Dr. Lipson without also providing property damage estimates that would better inform him as to the severity of the accident. In addition, Plaintiff questions Ms. Koval's qualifications and training. (Pl.'s Resp. ¶ 8(a)).

Dr. Charles Court, a pain management specialist, in April, September, and October 2000, and Dr. Court opined in reports dated September 18, 2000 and October 17, 2000 that although Plaintiff did have persistent neck pain, she suffered other somatic complaints that were not clearly attributable to the accident, and that there was a "significant non-organic component to [Plaintiff's] pain syndrome" (Def.'s Mot. Ex. N; Ex. O); and Plaintiff testified in her deposition that she had been assisting for two years as a volunteer with the Food Bank at her church for approximately two hours every other week (Def.'s Mot.Ex. P. at 135–37).[6]

Defendant argues that the FCE by Mr. Evans, the addendum to Dr. Daneshdoost's report, and Plaintiff's deposition, among other things, provide a reasonable basis for Defendant's decision to terminate Plaintiff's wage loss benefits because they demonstrate that Plaintiff was capable of working. The reports and deposition, however, indicate only that Plaintiff may have been able to work on a *part-time* basis. Ms. Koval admitted that if a claimant has coverage for wage loss benefits and a doctor indicates that the claimant can only work part time, Defendant pays partial benefits. (Def.'s Reply Ex. S. at 123.) Ms. Koval further admitted that, following the decision to terminate benefits, she never revisited the issue as to whether Defendant should have reinstated wage loss benefits—whether full or partial—to Plaintiff based on upon medical records. (Def.'s Reply Ex. S. at 124–25; 157.) *See Klinger,* 895 F.Supp. at 714 (commenting that reckless behavior can constitute bad faith when an insurer deliberately acts in conscious disregard of, or with indifference to, the rights of the insured). A reasonable jury could find that Defendant knew or recklessly disregarded its lack of a reasonable basis for not paying partial wage loss benefits, particularly if, as Defendant argues in its summary judgment motion, Defendant's decision to discontinue benefits was supported by reports indicating that Plaintiff was capable of returning to work on a part-time basis. There is a genuine issue of material fact, therefore, as to whether Defendant's failure to pay at least partial wage loss benefits constituted bad faith.

### III. Conclusion

There exists a genuine issue of material fact as to whether Defendant lacked a

---

**6.** In response, Plaintiff offers, among other things, the following facts: on October 3, 2000, Ms. Teresa Honshly conducted another FCE on Plaintiff and concluded that Plaintiff "does not demonstrate the ability to perform work tasks and activities at this time" (Pl.'s Resp.Ex. 15 at 3); and on February 1, 2001, Plaintiff began treatment with Dr. Kenneth Choquette, another pain management specialist, who stated in a report dated March 16, 2001 that "within a reasonable degree of medical certainty, the injuries sustained to [Plaintiff] on 3/19/99 via a car accident are a direct cause of the cervical pathology seen on MRI and directly related to the radicular neck pain complaints that the patient has had ever since the accident and not prior to the accident ... [Plaintiff] is unable to perform any work-related duties at the present time" (Pl.'s Resp.Ex. 16 at 2).

Dr. Choquette also commented:
"I had a chance to review Dr. Barry Lipson's IME, and I find little credibility in this report. You cannot look at pictures of a car accident to determine the internal inflammation and type of injury suffered. There have been many fender-benders that have created severe joint inflammation via whiplash injuries, well documented in the literature, without any physical evidence of auto damage at all. No comments should be made about prior motor vehicle accidents, because the patient was completely asymptomatic prior to this auto accident. Therefore, all prior injuries were completely healed and were not causing the patient any problems. The injuries are not degenerative in nature and are usually traumatically induced, especially with multilevel disk pathology." (Pl.'s Resp.Ex. 16 at 2.)

reasonable basis for the denial of wage loss benefits and whether it knew or recklessly disregarded its lack of a reasonable basis. Accordingly, the Court will deny Defendant's motion for partial summary judgment.

An appropriate Order follows.

## ORDER

**AND NOW,** this 8th day of January, 2002, upon consideration of Defendant's Motion for Partial Summary Judgment (docket no. 17), Plaintiff's Response thereto (docket no. 18), Plaintiff's Memorandum of Law Contra the Motion for Partial Summary Judgment (docket no. 19), and Defendant's Reply (docket no. 22), **IT IS ORDERED** that Defendant's Motion is **DENIED.**